UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THERMAL DYNAMICS
INTERNATIONAL, INC.,

　Plaintiff,

　　v.

SAFE HAVEN ENTERPRISES, LLC, *et al.*,

　Defendants.

Civil Action No. 13-721 (CKK)

**MEMORANDUM OPINION**
(July 8, 2013)

Plaintiff Thermal Dynamic International, Inc. ("TDI"), filed suit against Safe Haven Enterprises, LLC, Alta Baker, and John Baker, alleging the Defendants failed to pay the final invoice submitted by TDI for work performed as a subcontractor for Safe Haven for work on the United States embassy in Yemen. Presently before the Court is the Defendants' [15] Motion to Dismiss, which the Court construes as a motion to compel arbitration and in the alternative to dismiss for failure to state a claim. Upon consideration of the pleadings[1] and the relevant legal authorities, the Court finds the Plaintiff is contractually bound to arbitrate its claims against Safe Haven, but the Defendants failed to demonstrate the claims against the individual Defendants are subject to mandatory arbitration. Although the Plaintiff has stated a claim for unjust enrichment against the Baker Defendants, the Complaint fails to state a claim for negligent and fraudulent misrepresentation. Accordingly, the Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART as set forth below.

---

[1] Defs.' Mot. to Dismiss, ECF No. [15]; Pl.'s Opp'n, ECF No. [16]; Defs.' Reply, ECF No. [17].

## I. BACKGROUND

For purposes of this motion, the Court presumes as true all well-pleaded factual allegations in the Complaint. Safe Haven is a limited liability company organized under the laws of the state of Louisiana, with its principal place of business also in Louisiana. Compl. ¶ 1. Alta Baker, the Chief Executive Officer and owner of Safe Haven, and John Baker, an officer and co-owner of Safe Haven, both reside in Louisiana. *Id.* at ¶¶ 2-3. In September 2006, the Department of State awarded Safe Haven a contract to perform construction at the United States embassies in Yemen and Bahrain. *Id.* at ¶ 11. Safe Haven awarded a subcontract to TDI to perform work at both embassies, and subsequently issued a change order increasing the contract price in exchange for TDI performing additional work at the embassy in Yemen. *Id.* at ¶¶ 12-13. The subcontract provides that Safe Haven must make final payment to TDI once TDI completes the work required by the subcontract <u>and</u> Safe Haven has received payment from the State Department for the work performed by TDI. *Id.* at ¶ 14.

On April 28, 2009, the State Department, Safe Haven, and TDI executed a "Notice of Substantial Completion" verifying that TDI had fully performed its obligations under the subcontract with respect to the embassy in Yemen. Compl. ¶ 17. TDI subsequently submitted a final invoice in the amount of $356,574.96 to Safe Haven for the work performed by TDI at the embassy in Yemen. *Id.* at ¶ 18. Safe Haven purportedly refused to pay the final invoice on the grounds Safe Haven had yet to receive final payment for the work from the State Department. *Id.* at ¶ 19. For more than three years, TDI continued to demand payment, but Safe Haven refused, asserting the State Department had yet to provide final payment to Safe Haven. *Id.* at ¶¶ 20-28. TDI asserts that throughout this process, the Defendants indicated the final invoice would be paid once Safe Haven received payment from the State Department. *Id.* at ¶ 29.

According to the Complaint, the State Department made the final payment to Safe Haven by no later than November 2012. Compl. ¶ 30. After learning of the final payment from the State Department, TDI once again demanded that Safe Haven satisfy the final invoice. *Id.* at ¶ 31. The Plaintiff filed suit on May 16, 2013, asserting five causes of action. *Id.* at ¶¶ 34-35. First, the Complaint alleges Safe Haven breached the subcontract by failing to satisfy the final invoice submitted by TDI despite receiving final payment from the State Department. *Id.* at ¶¶ 37-45. Second, the Plaintiff alleges it conferred a benefit upon Defendants Alta and John Baker through the work performed by TDI under the subcontract, and the individual Defendants were unjustly enriched by failing to pay the final invoice despite receiving final payment from the State Department. *Id* at ¶¶ 46-53. Third, the Complaint alleges Safe Haven breached the covenant of good faith and fair dealing by concealing final payment from the State Department and refusing to satisfy the final invoice from TDI. *Id.* at ¶¶ 54-64. Fourth, the Plaintiff alleges the Defendants had an obligation to "communicate carefully and honestly with TDI regarding . . . payments [Safe Haven] received from the State Department," and thus are liable for negligent misrepresentations for claiming that Safe Haven had not received final payment from the State Department. *Id.* at ¶¶ 65-73. Fifth and finally, the Complaint asserts a claim for fraudulent misrepresentation against all Defendants based on the statement to the Plaintiff that Safe Haven had yet to receive final payment from the State Department, and failed to notify the Plaintiff when the final payment was received. *Id.* at ¶¶ 74-85. The Defendants subsequently moved to dismiss the Complaint.

## II.  LEGAL STANDARD

*A.     Motion to Compel Arbitration*

Although styled as a motion to dismiss, the Defendants in essence move to compel the

Plaintiff to arbitrate the claims asserted in the Complaint.  The Federal Arbitration Act ("FAA") provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . or the refusal to perform the whole or any part thereof . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Under District of Columbia law,[2] "arbitration is predicated on the consent of the parties to a dispute, and the determination of whether the parties have consented to arbitrate is a matter to be determined by the courts on the basis of contracts between the parties."  *Bailey v. Fed. Nat'l Mortgage Ass'n*, 209 F.3d 740, 746 (D.C. Cir. 2000).  "[A]n order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage."  *Air Line Pilots Ass'n v. Fed. Express Corp.*, 402 F.3d 1245, 1248 (D.C. Cir. 2005) (citation omitted).

  B.  *Motion to Dismiss for Failure to State a Claim*

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the grounds it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the

---

[2] The parties agree that District of Columbia law governs issues relating to the subcontract.  *See* Pl.'s Opp'n at 6, 11; Defs.' Reply at 3.

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. In deciding a Rule 12(b)(6) motion, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by [the parties]." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (citations omitted).

## III. DISCUSSION

The Defendants move to dismiss the Complaint on four grounds: (1) the Plaintiff's claims are subject to a mandatory arbitration clause in the subcontract; (2) the Plaintiff failed to state a claim for breach of contract against Safe Haven; (3) the Plaintiff cannot sustain the alleged tort claims because they arise out of the subcontract; and (4) the Plaintiff cannot bring a claim against the individual member/owners of a limited liability company. The Court agrees that the Plaintiff's claims against Safe Haven must be pursued in arbitration, therefore the Court does not consider whether the Plaintiff adequately stated a claim for breach of contract. However, the Plaintiff is not required to arbitrate its claims against the individual Defendants. Therefore, the Court addresses the Plaintiff's motion to dismiss the remaining claims for failure to state a claim. Ultimately, the Plaintiff has stated a claim for unjust enrichment against the individual Defendants, but the Complaint otherwise fails to state a claim.

### A.   *Motion to Compel Arbitration*

The Defendants move to compel the Plaintiff to arbitrate all claims raised in the Complaint. "[T]he party asserting the existence of a contract has the burden of proving its existence." *Bailey*, 209 F.3d at 746. "In this context, that burden extends to proving that there was an agreement to all material terms and that the parties intended to submit to mandatory

arbitration."  *PCH Mut. Ins. Co., Inc. v. Cas. & Surety, Inc.*, 750 F. Supp. 2d 125, 142 (D.D.C. 2010) (citing *Bailey*, 209 F.3d at 745).  "When charged with construing the terms of a contract, a court should begin with the text of the agreement itself, giving the language chosen by the parties—which is presumed to be the most reliable indicator of the parties' intent—its plain meaning."  *Id.*  This is an objective inquiry: the Court must determine the meaning that a "reasonable person in the position of the parties" would attach to the language at issue.  *DLY-Adams Place, LLC v. Waste Mgmt. of Md., Inc.*, 2 A.3d 163, 166 (D.C. 2010) (citation omitted).

> The subcontract provides that
>
> *Any claim arising out of or related to this Subcontract*, except claims as otherwise provided in Section 4.1.5 and except those waived in this Subcontract, *shall be subject to arbitration*.  Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Section 6.1.

Defs.' Ex. A (Subcontract) § 6.2.1 (emphasis added).  This provision is unambiguous: except for two discrete sets of claims, *any* claim arising out of or related to the subcontract is subject to arbitration.  The Plaintiff does not dispute that its claims arise out of or relate to the subcontract.  Nor does the Plaintiff argue that its claims fall into either exception set forth in the text of section 6.2.1.  In fact, the Plaintiff's Opposition omits <u>any</u> reference to this section of the subcontract.  *See* Pl.'s Opp'n at 7-9.  Instead, the Plaintiff argues that a different section of the agreement is ambiguous as to whether its claims are subject to arbitration.

In support of its contention that the subcontract is ambiguous, the Plaintiff points to section 6.1.1, which states that "[a]ny claim arising out of or related to this Subcontract, except claims as otherwise provided in Section 4.1.5 and except those waived in this Subcontract, shall be subject to mediation as a condition precedent to arbitration *or the institution of legal or equitable proceedings by either party*."  Defs.' Ex. A § 6.1.1 (emphasis added).  "A contract is not ambiguous merely because the parties disagree over its meaning or could have drafted clearer

6

terms." *PCH*, 750 F. Supp. 2d at 143. "The relevant question is not whether the contract uses the most precise language a court can imagine ex post." *Hunt Constr. Grp., Inc. v. Nat'l Wrecking Corp.*, 587 F.3d 1119, 1122 (D.C. Cir. 2009). . Rather, "[a] contract is ambiguous when, and only when . . . the provisions in controversy are[] reasonably or fairly susceptible to different constructions [or] interpretations, or two or more different meanings." *DLY–Adams Place*, 2 A.3d at 166–67 (citations omitted). The language in the mediation provision notwithstanding, the arbitration provision in the subcontract is not *reasonably* susceptible to more than one construction. The subcontract provides that *any* claim relating to the subcontract *shall* be subject to arbitration. To interpret the subcontract as suggested by the Plaintiff would read the term "shall" out of section 6.2.1. Accordingly, the Plaintiff's claims as to Safe Haven are subject to arbitration and must be dismissed from this suit.

The Defendants' motion to compel arbitration is not limited merely to the claims pending against Safe Haven; the Defendants seek an order compelling arbitration of *all* claims in the Complaint. The Plaintiff argues that "[b]ecause there is no agreement to arbitrate between TDI and the Baker Defendants, TDI cannot be compelled to arbitrate its claims against the Baker Defendants." Pl.'s Opp'n at 8. "Absent some ambiguity in the agreement, however, it is the language of the contract that defines the scope of disputes subject to arbitration." *Equal Employment Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). "[N]othing in the [FAA] authorizes a court to compel arbitration of any issues, or by any parties, that are not already covered in the agreement." *Id.* The subcontract specifically provides for the arbitration of claims against non-parties in certain circumstances, but neither party discusses this section of the agreement in the context of the Defendants' motion to compel arbitration of the Plaintiff's claims against the individual Defendants. Defs. Ex. A § 6.2.4. On the present record, the

Defendants failed to offer any legal authority for requiring the Plaintiff to arbitrate claims against the individual Defendants who are not parties to the subcontract. Thus, the Defendants' motion to compel arbitration as to the Baker Defendants is denied without prejudice.

### B.  *Motion to Dismiss for Failure to State a Claim*

The Defendants also move to dismiss the claims asserted against the individual Defendants on a number of grounds. As a threshold matter, the parties disagree as to what law governs the Plaintiff's tort claims. The parties agree that District of Columbia law governs the arbitrability and breach of contract claims because, as the Plaintiff asserts "the subcontract at issue was between a Florida company (TDI) and a Louisiana company (Safe Haven) which had a prime contract with the United States Government which was executed overseas. Thus, the District of Columbia has the most significant relationship with the contract." Pl.'s Opp'n at 11. The Plaintiff suggests that Florida law governs the negligent and fraudulent misrepresentation claims, while the Defendant argues District of Columbia law applies to all claims in this case.

"A federal court sitting in diversity applies the conflict of law rules of the forum in which it sits." *City of Harper Woods Employees' Retirement Sys. v. Olver*, 589 F.3d 1292, 1298 (D.C. Cir. 2009). "To determine which jurisdiction's substantive law governs a dispute, District of Columbia courts blend a governmental interests analysis with a most significant relationship test." *Doe v. Exxon Mobil Corp.*, 654 F.3d 11, 69 (D.C. Cir. 2011) (citations omitted). "Under the governmental interests analysis[,] . . . [a court] must evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy would be most advanced by having its law applied to the facts of the case under review." *Id.* (citations omitted). To determine which jurisdiction has the most relationship to the case, the Court must consider: (1) "the place where the injury occurred"; (2) "the place where the conduct causing the injury

occurred"; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) "the place where the relationship, if any, between the parties is centered." *Id.* (citation omitted).

With respect to the first factor, the Plaintiff's injury occurred "where [it] received the alleged misrepresentations." *Washkoviak v. Student Loan Marketing Ass'n*, 900 A.2d 168, 181 (D.C. 2006). According to its Opposition, the Plaintiff received the purported misrepresentations in Florida, where TDI is incorporated and maintains its primary place of business. Pl.'s Opp'n at 12. Neither party indicates where the Defendants made the alleged misrepresentations, therefore the second factor is irrelevant to the Court's analysis. As to the third factor, Safe Haven is organized under the laws of Louisiana, which is also where the Baker Defendants are domiciled. *Id.* at ¶¶ 1-3. Thus, the third factor favors application of Florida law in light of the Plaintiff's connection to that state. Fourth, it is undisputed that the relationship between the parties, namely the subcontract, is centered in the District of Columbia, which favors applying District of Columbia law to all of the Plaintiff's claims. Pl.'s Opp'n at 11; Defs.' Reply at 8-9.

"[I]t must be remembered . . . that a mere counting of contacts is not what is involved. The weight of a particular state's contacts must be measured on a qualitative rather than quantitative scale." *Washkoviak*, 900 A.2d at 181 (citations omitted). Florida has a "powerful interest in protecting its residents from fraud and misrepresentation," while the District of Columbia has an equally strong interest in ensuring that parties do not engage in fraudulent behavior in connection with contracts centered in the District. *See id.* at 180-81. However, "the place of injury is less significant in the case of fraudulent misrepresentations than in the case of personal injuries and of injuries to tangible things or cases of false imprisonment and malicious prosecution." *Id.* at 181-82. Moreover, the Plaintiff's misrepresentation claims directly relate to

the subcontract. *E.g.*, Compl. ¶ 80 ("[The Defendants] knowingly and intentionally misrepresented and concealed the fact that Safe Haven had received the final payment from the State Department in an effort to avoid Safe Haven's *contractual obligation* to pay TDI.") (emphasis added). By the Plaintiff's own admission the District of Columbia "has the most significant relationship with the contract." Pl.'s Opp'n at 11-12. On balance, the Court finds that because of the relationship between the Plaintiff's claims and the subcontract, in addition to the parties' agreement that the District of Columbia has the most significant relationship to the subcontract, the Court should apply District of Columbia law. With the relevant law established, the Court turns to the Defendants' motion to dismiss for failure to state a claim as to the three claims against the individual Defendants. Finally, the Court briefly addresses the new arguments raised by the Defendants in their Reply brief.

  a. Unjust Enrichment

Count Two of the Complaint alleges the individual Defendants were unjustly enriched in that they received the benefit of the work performed by TDI and final payment by the State Department, but the retention of that benefit is unjust in light of Safe Haven's refusal to pay the final invoice. The Defendants move to dismiss this and all other claims against the individual Defendants on the grounds District of Columbia law precludes claims against John and Alta Baker in their individual capacities. Defs.' Mot. at 7-8. The Plaintiff argues that Louisiana law governs whether the Plaintiff can pursue claims against member/owners of a limited liability company, and that the Complaint has alleged sufficient facts to state claims against the Bakers in this case. Pl.'s Opp'n at 23-25. The Defendant conceded that "D.C. law requires the law of Louisiana for matters of 'corporate governance,'" but contends "there are no matters of corporate governance at issue besides Plaintiff's attempt to pierce the corporate veil." Defs.' Reply at 9

10

n.2. Curiously, the Defendant then asserts that "[i]n light of the similarity of the laws between the District of Columbia and Louisiana on such issues, D.C. law should apply as well." *Id.* The similarity between the laws of two jurisdictions does not empower the Court to ignore choice of law rules. Ultimately the choice of law question as to corporate governance issues is irrelevant because the Defendants never responded to the Plaintiff's argument that the allegations in the Complaint are sufficient (at least on a motion to dismiss) to pierce the corporate veil and allege claims against the individual defendants. Therefore, the Court treats the Plaintiff's arguments on this issue as conceded. *See Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F.Supp.2d 15, 25 (D.D.C. 2003). Accordingly, the Defendants' motion is denied with respect to Count Two of the Complaint.

    b. <u>Negligent and Fraudulent Misrepresentation</u>

  Count IV of the Complaint alleges that "[a]s a result of the Subcontract, Safe Haven . . . owed duties of candor and good faith and fair dealing to TDI, particularly with respect to the disbursement of funds from the State Department." Compl. ¶ 66; *see also id.* ("Safe Haven's duties included a duty to communicate carefully and honestly with TDI regarding its communications with the State Department and the payments that it received from the State Department."). The Plaintiff contends the Baker Defendants breached this duty by representing that Safe Haven would pay TDI upon receipt of final payment from the State Department but failed to inform TDI when it received the final payment from the State Department. *Id.* at ¶ 69. Count V asserts these same representations were fraudulent. *Id.* at ¶¶ 77-84.

  The Defendants move to dismiss Counts IV and V on the grounds the Plaintiff cannot sustain a tort claim for negligent or fraudulent misrepresentation based on a breach of a contract.

> [C]onduct occurring during the course of a contract dispute may be the subject of a fraudulent or negligent misrepresentation claim when there are facts separable from the terms of the contract upon which the tort may independently rest and when there is a duty independent of that arising out of the contract itself, so that an action for breach of contract would reach none of the damages suffered by the tort.

*Choharis v. State Farm Fire & Cas. Co.*, 961 A.2d 1080, 1089 (D.C. 2008). Choharis sued State Farm, alleging the insurance company made negligent and fraudulent misrepresentations regarding the availability of temporary housing and the presence of mold in the insured property. *Id.* at 1089-90. The District of Columbia Court of Appeals noted that the purportedly negligent or fraudulent statements and "any duty with respect thereto related directly to the question of interim living expenses *provided for in the contract*." *Id.* (emphasis added); *see also id.* ("That is to say, the assertions directly related to an obligation arising under the contract; viz., compensation for mold if it existed, and State Farm had no unique source of knowledge on the subject."). "Any misstatements with respect thereto which resulted in added expense to Choharis that he would not otherwise have had to bear would be potentially compensable under contract principles." *Id.* at 1090. Accordingly, the court held Choharis could not pursue its negligent and fraudulent misrepresentation claims against State Farm. *Id.*

As in *Choharis*, TDI's allegations of negligent and fraudulent misrepresentations by the Defendants are inseparable from the subcontract. The Complaint specifically alleges that "*[a]s a result of the Subcontract*," Safe Haven had a "duty to communicate carefully and honestly with TDI regarding its communications with the State Department and the payments that it received from the State Department." Compl. ¶ 66 (emphasis added). Likewise, the Plaintiff suggests that TDI's reliance on the purportedly fraudulent statements was reasonable "because of the implied duty of good faith and fair dealing *implied in the contract* between the parties required by Safe Haven and its owners." Compl. ¶ 82 (emphasis added). Wholly absent from the

Complaint is any allegation that the Defendants had "a duty independent of that arising out of the [sub]contract itself." *Choharis*, 900 A.2d at 1089.

The Plaintiff conclusorily asserts that these claims are "based upon the separate and independent actions by both Safe Haven and John Baker to: (1) advise TDI that it would pay TDI once it received payment from the State Department; and (2) to conceal the fact that the State Department had made the final payment." Pl.'s Opp'n at 19. But, as the Plaintiff itself alleges in the Complaint, these statements were only negligent and/or fraudulent because they violated *duties arising out of the contract*. Without any citation to authority, the Plaintiff alleges that "the duty to speak with care can arise from equitable principles that exist separate and apart from any contractual relationship." Pl.'s Opp'n at 20; *id.* at 21 ("[T]he misconduct alleged involved intentional misrepresentations which were designed to deceive and to unlawfully retain a benefit."). Even if a duty *can* arise from equitable principles, that is not what the Complaint has alleged in this case, and the Plaintiff cannot amend the Complaint with contrary allegations in an Opposition brief. *See Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003).

The Plaintiff also alleges that it may bring a claim for negligent misrepresentation against the individual Defendants because the individual Defendants are not parties to the subcontract. Pl.'s Opp'n at 19. The standard set forth in *Choharis* is not dependent on the defendant being a party to the contract, but rather (1) whether the defendant's duty arises out of the contract; and (2) whether the damages the plaintiff allegedly suffered are compensable by a breach of contract claim. The Complaint alleges the Baker Defendants' duties arose out of the contractual relationship between Safe Haven and TDI. Compl. ¶¶ 67, 82. The Plaintiff offers no authority for its attempt to have its cake and eat it too: if the individual Defendants had duties arising out

of the contractual relationship between Safe Haven and TDI, the Plaintiff cannot avoid the limitations on tort claims against the Defendants on the grounds the individual Defendants are not bound by the subcontract. Furthermore, the only injury alleged as a result of these claims is that TDI was deprived of the amount due under the final invoice---the exact injury allegedly incurred as a result of Safe Haven's purported breach of the subcontract. *Cf.* Compl. ¶ 44 *with id.* at ¶¶ 72, 84. The duties on which the negligent and fraudulent misrepresentation claims are based arise entirely out of the subcontract, and the Plaintiff's alleged injury is entirely compensable by a breach of contract claim. Accordingly, the Count IV fails to state a claim under District of Columbia law.[3]

### c.     Defendants' Remaining Arguments

For the first time in their Reply, the Defendants allege the Plaintiff cannot bring a claim of unjust enrichment against Defendant John Baker because he is "merely an employee of Safe Haven," and does not hold any corporate office or ownership interest. Defs.' Reply at 10. The Defendants also suggest for the first time in their Reply that "Plaintiff fails to allege and has suffered no damages proximately caused by any alleged misrepresentation and, therefore, has failed to state a claim for Counts III, IV and V." *Id.* at 13. The Court shall not consider an argument raised for the first time in the Plaintiff's Reply, depriving the Defendants of the opportunity to respond. *See, e.g.*, *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008) ("We need not consider this argument because plaintiffs . . . raised it for the first time in their reply

---

[3] It is not clear that the Plaintiff could sustain a claim for negligent or fraudulent misrepresentation under Florida law either. The sole case cited by the Plaintiff establishes that a party may bring a claim based on negligent or fraudulent misrepresentations made prior to the formation of the contract, but the Plaintiff does not provide any authority for bringing misrepresentation claims based on statements regarding the parties' obligations under the contract after it is formed. *See Tiara Condominium Ass'n v. Marsh & McClennan Co.*, 110 So.3d 399, 400-01 (Fl. 2013).

brief."); *McBride v. Merrell Dow & Pharm.*, 800 F.2d 1208, 1211 (D.C. Cir.1 986) ("Considering an argument advanced for the first time in a reply brief . . . is not only unfair to an appellee, but also entails the risk of an improvident or ill-advised opinion on the legal issues tendered.") (citation omitted).

## IV.  CONCLUSION

The subcontract entered into by the Plaintiff and Safe Haven unambiguously requires the Plaintiff to arbitrate its claims against Safe Haven.  On the present record, the Plaintiff's claims against the individual Defendants are not subject to mandatory arbitration.  District of Columbia law governs the Plaintiff's tort claims, and the Plaintiff has stated a claim for unjust enrichment as to the individual Defendants.  However, as currently alleged, the Plaintiff's claims for negligent and fraudulent misrepresentation are inseparable from the contractual relationship between the parties, and thus fail to state a claim.  Accordingly, the Defendants' [15] Motion to Dismiss is GRANTED IN PART and DENIED IN PART.  An appropriate Order accompanies this Memorandum Opinion.

　　　　　　　　　　　　　　　　　　　　　　*/s/*
　　　　　　　　　　　　　　　　　　　　　　**COLLEEN KOLLAR-KOTELLY**
　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE