UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THERMAL DYNAMIC INTERNATIONAL, INC.,<br>    *Plaintiff*,<br>    v.<br>SAFE HAVEN ENTERPRISES, LLC, ALTA BAKER and JOHN BAKER,<br>    *Defendants*. | Civil Action No. 1:13-cv-00721 (CKK) |

**MEMORANDUM OPINION**
(May 25, 2016)

Plaintiff Thermal Dynamic International, Inc. ("TDI"), filed suit against Defendants Safe Haven Enterprises, LLC ("Safe Haven"), Alta Baker, and John Baker, alleging the Defendants failed to pay the final invoice submitted by TDI for work performed as a subcontractor at the United States embassy in Yemen. Presently before the Court are Plaintiff's [43] Motion to Confirm Arbitration Award and Defendants' [47] Cross Motion to Dismiss. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court finds that there is no basis to vacate the arbitration award entered by the American Arbitration Association on December 30, 2014 in TDI's favor and against Defendant Safe Haven ("the Award"). The Court further finds that there is no basis to grant Defendants' request that this Court vacate the Award or that this Court dismiss this matter in favor of Defendants. Accordingly, the Court shall GRANT Plaintiff's [43] Motion to Confirm Arbitration Award and DENY Defendants' [47] Cross Motion to Dismiss.

---

[1] The Court's consideration has focused on the following documents and their supporting exhibits: TDI's Mem in Support of TDI's Mot. to Confirm Arbitration Award, ECF No. [43]; Def. Safe Haven's Mem. in Opp'n to Pl.'s Mot. to Confirm Arbitration Award and Defs.' Mem. in Support of Defs.' Mot. to Dismiss, ECF No. [47-1]; TDI's Reply Mem. in Support of TDI's Mot. to Confirm Arbitration Award, ECF No. [54]; Defs.' Reply Mem. in Support of Defs.' Mot. to Dismiss, ECF No. [56].

1

**I. BACKGROUND**

    A.  <u>Factual Background</u>

In September 2006, the United States Department of State (the "State Department") awarded Defendant Safe Haven a contract to perform construction at the United States embassies in Yemen and Bahrain. *See* Subcontract (Sept. 7, 2006), ECF No. [47-2], at 1. Safe Haven, in turn, awarded a subcontract to Plaintiff TDI, pursuant to which TDI agreed to install certain mechanical equipment in each embassy. *See id.* The subcontract referred to the two embassy projects as the "Sana'a, Yemen Embassy Environmental Security Measures" project and the "Manama, Bahrain Embassy Environmental Security Measures" project. *See id.*

On May 16, 2013, TDI filed the instant action, asserting five causes of action against Defendant Safe Haven, as well as Alta Baker, the Chief Executive Officer and owner of Safe Haven, and John Baker, an officer and co-owner of Safe Haven. The Complaint alleged that TDI had fully performed its obligations under the subcontract with respect to the embassy in Yemen, but that Safe Haven refused to pay the final invoice, which was in the amount of $356,574.96. Compl. ¶¶ 17, 19.

On July 8, 2013, this Court granted Defendants' motion to compel arbitration as to the claims against Defendant Safe Haven, and dismissed all claims against Defendants John and Alta Baker with the exception of an unjust enrichment claim. *See* Mem. Op. and Order, ECF Nos. [20], [21]. Plaintiff continued to pursue its unjust enrichment claim against the Bakers in this Court, while Plaintiff pursued its claims against Safe Haven in arbitration. In May 2014, discovery closed in the case involving the Bakers, and the Court granted a Stay pending the resolution of the associated arbitration between TDI and Safe Haven. *See* Minute Order (May 7, 2014) and Order (May 19, 2014), ECF No. [39].

On December 30, 2014, the Arbitrator who heard Plaintiff's claims against Safe Haven issued a six-page decision finding that Safe Haven had breached the Subcontract and was liable to TDI for the principal amount of $356,574.86.  *See* Arbitration Decision (Dec. 30, 2014), ECF No. [43-3].  The Arbitrator's decision followed several months of discovery, a three-day, in-person hearing, and extensive pre-hearing and post-hearing briefing by the parties.  *See id.*; *see also* Safe Haven's Motion to Dismiss TDI's Claims, ECF No. [52-6]; TDI's Post-Hearing Brief, ECF No. [43-4], Safe Haven's Post-Hearing Brief, ECF No. [43-5]; 10/27/2014 Email re: Arbitration Hearing, ECF No. [43-6].  On January 6, 2015, the American Arbitration Association delivered the Award to the parties.

On November 13, 2015, Plaintiff filed the instant Motion to Confirm Arbitration Award.  Plaintiff indicated in its motion that Safe Haven had not paid the Award.  Plaintiff also indicated that Safe Haven did not file a motion to vacate the Award and contends that Safe Haven thereby waived its right under the Federal Arbitration Act to challenge the award at this stage.  *See* Pl.'s Mem. in Supp. of Mot. to Confirm, ECF No. [43], 4-5.

On December 14, 2015, Defendant Safe Haven filed its opposition to Plaintiff's motion and filed a cross motion to dismiss Plaintiff's claims against Defendants, arguing that Plaintiff committed "corruption and fraud" before this Court and in the arbitration proceeding.  Defs.' Cross Motion, ECF No. [47-1], at 19.  Safe Haven concedes in its 43-page motion that it failed to challenge the arbitration decision within the three-month window allowed under the Federal Arbitration Act, and has provided no explanation for its failure to so challenge.  *See id.*  Safe Haven has instead requested that the Court "create an exception in the form of a sanction to allow [Safe Haven] to raise an Affirmative Defense of 'corruption or fraud' under 9 U.S.C. § 12

even if [Safe Haven] did not file a Motion to Vacate within the three months (sic) required under 9 U.S.C. § 12[.]" *Id.* at 19-20.

Before the Court discusses the merits of Plaintiff's Motion to Confirm Arbitration Award and Defendants' Cross Motion to Dismiss, the Court shall first resolve a procedural motion raised by Plaintiff during briefing.

> B. <u>The Court shall DENY Plaintiff TDI's Motion to Strike Defendants' Reply Memorandum, or in the Alternative, to Request Permission to File a Surreply</u>

On December 21, 2015, Plaintiff TDI filed its reply memorandum in support of its Motion to Confirm Arbitration Award and in opposition to Defendants' Cross Motion to Dismiss. On December 24, 2015, Defendants filed their reply memorandum in support of Defendants' Cross Motion to Dismiss, contending that Plaintiff failed to respond to certain allegations in Defendants' Cross Motion to Dismiss, and that Plaintiff conceded the allegations contained therein. *See* Defs.' Reply, ECF No. [56], at 4-6.

On December 29, 2015, Plaintiff filed a Motion to Strike Defendants' Reply Memorandum, or, in the Alternative, to Request Permission to File a Surreply. *See* ECF No. [57]. In its motion, Plaintiff contends that the section entitled "Additional Statement of Facts" in Defendants' reply brief contains new facts not previously raised in the parties' motions. *See id.* at 1-2. Plaintiff also disputes Defendants' contentions that Plaintiff failed to respond to Defendants' allegations in Plaintiff's opposition brief. *See id.* at 2-3. Additionally, Plaintiff requests that the Court order Defendants to pay the cost of Plaintiff's filing any surreply addressing Defendants' "baseless arguments." *See id.* at 3. Defendants oppose Plaintiff's

motion, arguing that Defendants did not raise any "new" factual allegations or arguments in its reply brief. *See* ECF No. [58], at 2-4.[2]

At the outset, the Court notes that surreplies are generally disfavored, and the determination as to whether to grant or deny leave is entrusted to the sound discretion of the district court. *Akers v. Beal Bank,* 760 F. Supp.2d 1, 2 (D.D.C. 2011). In exercising its discretion, the Court should consider whether the movant's reply in fact raises arguments or issues for the first time, whether the non-movant's proposed surreply would be helpful to the resolution of the pending motion, and whether the movant would be unduly prejudiced were leave to be granted. *Glass v. Lahood,* 786 F. Supp. 2d 189, 231 (D.D.C. May 20, 2011).

Here, the Court finds that the section in Defendants' reply memorandum entitled "Additional Statement of Facts" is a restatement of allegations already in the record, and that a surreply from Plaintiff would not be helpful to the resolution of the pending motions. *See* Defs.' Reply, ECF No. [56], at 2-4. Specifically, the allegations in the "Additional Statement of Facts" section in Defendants' reply brief merely repeat the allegations already presented in Safe Haven's Post-Hearing Brief, which Plaintiff itself submitted as an attachment to the instant Motion to Confirm. *See* Exhibit C to TDI's Motion to Confirm (ECF No [43-5]). Therefore, Defendants were within their right to rely on those allegations in their reply brief. *See Simms v.*

---

[2] Defendants also appear to argue that the section entitled "Additional Statement of Facts" functions as a counter to Plaintiff TDI's "Factual Background" section in TDI's response brief, and that TDI is "opening the door to convert [Safe Haven]'s Motion to Dismiss into a Motion for Summary Judgment." *See* ECF No. [58], at 7. To the extent that Defendants are requesting that the Court use its discretion to convert Defendant's Cross Motion to Dismiss to a motion for summary judgment, the Court shall decline to use its discretion to convert the instant motion to dismiss to one for summary judgment. *See Tele-Communications of Key West, Inc. v. United States*, 757 F.2d 1330, 1334 (D.C. Cir. 1985) (holding that before converting a motion to dismiss to a motion to summary judgment, the reviewing court "must assure itself that summary judgment would be fair to both parties").

*Ctr. for Corr. Health & Policy Studies*, 794 F. Supp. 2d 173, 186 (D.D.C. 2011) (finding that a brief that "simply points to evidence already in the record" does not raise new issues for the court to resolve). In light of the foregoing, the Court finds that there is no basis in the record to strike Defendants' reply from the record. The Court further finds that a surreply from Plaintiff would not be helpful to the resolution of the pending motions.[3] Accordingly, the Court shall, in an exercise of its discretion, DENY Plaintiff's [57] Motion to Strike Defendants' Reply Memorandum, or, in the Alternative, to Request Permission to File a Surreply.

The Court shall now consider the merits of Plaintiff's Motion to Confirm Arbitration Award and Defendants' Cross Motion to Dismiss.

## II. LEGAL STANDARD

The Federal Arbitration Act provides that "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. The Court may vacate an award where: (1) the award was "procured by corruption, fraud, or undue means"; (2) "there was evident partiality or corruption in the arbitrators, or either of them"; (3) the arbitrators were guilty of misconduct or misbehavior "by which the rights of any party have been prejudiced"; or (4) "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." *Id.* at § 10(a)(1)-(4). "[A]t any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award." *Id.* at § 9. The Court "must grant such an order unless the award is vacated, modified, or corrected as prescribed in [9 U.S.C. §§ 10–11]." *Id.*

---

[3] The Court notes that, although Plaintiff filed a motion for leave to file a surreply, Plaintiff did not file a proposed surreply with its motion.

### III. DISCUSSION

Plaintiff TDI moves this Court, pursuant to Section 9 of the Federal Arbitration Act for an entry of judgment confirming the Arbitration Award entered by the American Arbitration Association on December 30, 2014 in TDI's favor and against Defendant Safe Haven. *See* 9 U.S.C. § 9. In support of Plaintiff's motion, Plaintiff contends that (1) Defendant Safe Haven never filed a motion to vacate the Award, and the time to do so has expired, and (2) even had Safe Haven filed a timely challenge to the Award, Safe Haven would not be able to demonstrate a basis to vacate it because the record establishes that the arbitrator's decision reflected both the relevant law and the evidence. *See* TDI's Mem in Support of TDI's Mot. to Confirm Arbitration Award, ECF No. [43], at 8-12.

Defendant Safe Haven opposes Plaintiff's motion and contends that the Court should vacate the arbitration award on the grounds that the award was procured by "corruption or fraud" under Section 10 of the Federal Arbitration Act. *See* 9 U.S.C. § 10 (providing that a court may vacate an arbitration award "upon the application of any party to the arbitration . . . where the award was procured by corruption, fraud, or undue means").

Safe Haven, however, finds itself in a tenuous position, as Safe Haven failed to file a motion to vacate the award within three months, as required under Section 12 of the Act. *See* 9 U.S.C. § 12 ("Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered."). Safe Haven concedes that under well-established case law, a party opposing a motion to confirm an arbitration award is normally precluded from availing itself of an affirmative defense under Section 10 where that party failed to timely file a motion to vacate. *See* Def.'s Opp'n to Pl.'s Mot. to Confirm, ECF No. [47-1], at 19-20 (citing *Glaser v. Legg*, 928 F. Supp. 2d 236 (D.D.C.

2013); *Int'l Techs. Integration, Inc. v. Palestine Liberation Org.*, 66 F. Supp. 2d 3 (D.D.C. 1999)). Safe Haven also makes no effort to explain why it failed to timely file a motion to vacate the Arbitration Award. Instead, Safe Haven requests that this Court (1) "create an exception in the form of a sanction to allow [Safe Haven] to raise an Affirmative Defense of 'corruption or fraud' under 9 U.S.C. § 12 even if [Safe Haven] did not file a Motion to Vacate within the three months (sic) required under 9 U.S.C. § 12; (2) vacate the Award; and (3) dismiss the matter in its entirety." *Id.* at 19-20. Safe Haven contends that these sanctions are necessary in order to "protect the orderly administration of justice and to preserve the dignity of the tribunal." *Id.* at 20 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)).

    A. <u>Safe Haven's Theory that TDI Perpetuated Fraud on this Court</u>

Defendant Safe Haven specifically alleges that Plaintiff TDI "perpetuated its fraud on this Court by submitted (sic) a fraudulent response in its Answer to Interrogatory No. 16 in its Responses to Defendants' First Set of Interrogatories." *Id.* at 24. Interrogatory No. 16 is a complex 13-part interrogatory, which the Court now recites in its entirety:

> **INTERROGATORY NO. 16**: Identify all work performed by TDI for the Yemen Environmental Security Project and the Bahrain Environmental Security Project that was performed pursuant to any contract, dealing, working relationship, financial arrangement or otherwise of which Safe Haven was not a party to, and identify: (1) the dates the work was performed, including all dates TDI representatives and/or personnel were present on site; (2) the date TDI received payment for the work; (3) the name of the person(s) who authorized the work and their last known telephone number, address and email address; (4) the name of the person(s) who authorized payment for the work and their last known telephone number, address and email address; (5) the amount of each and every payment received by TDI; (6) the contract, dealing, working relationship, financial arrangement or otherwise that each payment was made pursuant to; (7) the specific work items that were completed to warrant payment; (8) the names of any Subcontractors or other third parties TDI entered into a contract, dealing, working relationship, financial arrangement or otherwise with to complete the work, and their last known telephone number, address and email address; (9) the name(s) of the TDI representative(s) who signed or agreed to the contract, dealing, working relationship, financial arrangement or otherwise that

>payments were made pursuant to; (10) the name(s) of the TDI representative(s) who signed the Subcontractor or other third party contract, dealing, working relationship, financial arrangement or otherwise that TDI entered into in order to complete the work and their last known telephone number, address and email address; (11) the name(s) of the TDI representative(s) who received the payment and their last known telephone number, address and email address; (12) the names of all TDI personnel who performed work at the Yemen Environmental Security Project site and the Bahrain Environmental Security Project site, and their last known telephone numbers, addresses and email addresses; and (13) the names of all TDI employees, agents, representatives and counsel, and any other person acting or purporting to act on its behalf, with knowledge of any of the above, and their last known telephone numbers, addresses and email addresses.

ECF No. [47-6], at 23-24.  TDI's objections and response to Interrogatory No. 16 are as follows:

>**RESPONSE:** TDI incorporates its general objections. TDI objects to this interrogatory because it is overbroad and unduly burdensome to the extent it seeks information that is not relevant to the matters at issue in the Complaint. TDI further objects to this interrogatory because it is not reasonably calculated to lead to the discovery of admissible evidence. TDI further objects to this Request because it lacks sufficient precision to allow TDI to formulate a response. TDI further objects because the prior interrogatories together with their subparts exceed the limit of 25 interrogatories set forth in the Federal Rules of Civil Procedure. <u>Without waiving these objections, TDI states that it did not perform any work for the Yemen Environmental Security Project and the Bahrain Environmental Security Project pursuant to any contract to which Safe Haven was not a party</u>.

ECF No. [48-2], at 27 (emphasis added).

Safe Haven contends that the underlined portion of TDI's response to Interrogatory No. 16 constitutes a "false answer to an interrogatory."  In support of that argument, Safe Haven posits a theory that TDI's response conflicts with information in documents subsequently produced by TDI during the arbitration proceeding.  *See* ECF Nos. [51-1]-[51-11], [52-1]-[52-8].  Safe Haven's theory is predicated on the fact that in its interrogatories, Safe Haven broadly defined the terms, "Yemen Environmental Security Project" and the "Bahrain Environmental Security Project," such that those terms included work performed at the two embassies, "*whether pursuant to the Subcontract and/or other contractual or other relationship between TDI and the*

9

*State Department and/or Sterling Royale Group and/or Kathleen McGrade and/or Brian Collingsworth.*" *See* ECF No. [47-6], at 3-4 (emphasis added).  Under Safe Haven's theory, TDI's response—when construed in light of the above definition promulgated in Safe Haven's interrogatories—constitutes a statement that TDI did not perform *any work* on the two embassies pursuant to *any relationship* between TDI and the third parties listed in the cited definition, namely, the State Department, the Sterling Royale Group, Kathleen McGrade, and Brian Collingsworth.  *See* Def.'s Opp'n to Pl.'s Mot. to Confirm, ECF No. [47-1], at 24-28.  Safe Haven asserts that such a statement would contradict information in documents subsequently produced by TDI.  *See id.*  Those documents indicate that TDI performed work on environmental projects—distinct from the specific Security Projects outlined in the Subcontract—at the U.S. embassies in Bahrain and Yemen pursuant to other contracts, which were between TDI and the State Department.  *See* ECF Nos. [51-1]-[51-11], [52-1]-[52-8].

Safe Haven contends that it has presented "clear and convincing evidence" of fraud perpetuated on this Court and in the Arbitration proceeding.  *See* Def.'s Opp'n to Pl.'s Mot. to Confirm, ECF No. [47-1], at 24-28.  Safe Haven further asserts that the alleged fraud warrants sanctions and the vacating of the Award pursuant to Section 10 of the Federal Arbitration Act.  *See* 9 U.S.C. § 10 (providing that a court may vacate an arbitration award "upon the application of any party to the arbitration . . . where the award was procured by corruption, fraud, or undue means").

    B.  <u>TDI's Response to Safe Haven's Allegations of Fraud</u>

Plaintiff TDI vehemently disputes Safe Haven's allegation that the Arbitration Award was procured through fraud.  TDI cites to the fact that Safe Haven litigated this very discovery dispute before the Arbitrator, and the Arbitrator concluded that Safe Haven's complaints about

TDI's response to Interrogatory No. 16 were without merit and caused no prejudice to Safe Haven. *See* TDI's Reply Mem. in Support of TDI's Mot. to Confirm Arbitration Award, ECF No. [54], at 2. TDI contends that Safe Haven's Cross Motion to Dismiss is "nothing more than a challenge to the Arbitrator's factual findings and legal determinations," and given the narrow scope of judicial review authorized by the Federal Arbitration Act, this Court cannot vacate an Award simply because "a party disagrees with the Arbitrator's resolution of a discovery dispute." *Id.*

TDI further contends that its response to Interrogatory No. 16 was truthful and reasonable in light of its objections. As TDI notes in its reply memorandum, TDI objected to Interrogatory No. 16 on the grounds that it was "overbroad and unduly burdensome to the extent it [ought] information to the matters at issue in the Complaint," and on the grounds that it was "not reasonably calculated to lead to the discovery of admissible evidence." TDI's Reply Mem. in Support of TDI's Mot., ECF No. [54], at 4. TDI also contends that Interrogatory No. 16 was "incomprehensible," to the extent that it sought information regarding work performed on the Yemen Environmental Security Project or the Bahrain Environmental Security Project, pursuant to any contract to which Safe Haven was not a party, because the Subcontract itself uses nearly identical terms to identify the tasks required by the Subcontract. *See* Subcontract (Sept. 7, 2006), ECF No. [47-2], at 1 (describing contractual obligations as to the "Yemen Embassy Security Measures" Project and the "Bahrain Embassy Environmental Security Measures" Project). Notwithstanding those objections, TDI attempted to respond to Interrogatory No. 16 by stating that "it did not perform any work for the Yemen Environmental Security Project and the Bahrain Environmental Security Project pursuant to any contract to which Safe Haven was not a party." ECF No. [48-2], at 27. TDI maintains that its response was reasonable in light of its objections

11

and consistent with its position that it did not perform any work on the tasks covered by the Subcontract pursuant to any contract or arrangement other than the Subcontract. TDI's Reply Mem. in Support of TDI's Mot., ECF No. [54], at 5. TDI also submits that Safe Haven did not confer with TDI to discuss TDI's response to Safe Haven's interrogatories, and that if Safe Haven had done so, then no motions would have been necessary. *See id.* at 5; *see also* ECF No. [54-7], at 2.

In support of its position, TDI also recounts, in detail, the procedural history of the Arbitration, following the discovery dispute. Several months after TDI submitted its responses to Safe Haven, Safe Haven filed a 45-page Motion to Dismiss and for Sanctions in the arbitration, which is almost identical to Safe Haven's 43-page Motion to Dismiss that is presently before the Court. *See* ECF No. [54-6]. The Arbitrator held a telephonic hearing on Safe Haven's motion to dismiss, and denied the motion to dismiss without prejudice, finding that the discovery issues raised by Safe Haven were intertwined with the merits of the case. *See* ECF No. [54-8]. The Arbitrator subsequently held a three day in-person hearing in Washington, D.C. TDI's Reply Mem. in Support of TDI's Mot., ECF No. [54], at 6. At that hearing, the Arbitrator heard live testimony, reviewing the deposition testimony of a State Department representative, Michael Ballantine, and reviewed all of the relevant contract documents, including correspondence, the notice of substantial completion, invoices, and payment records. *See id.* In addition, the Arbitrator allowed Safe Haven to submit further arguments in support of its motion to dismiss. *See id.* In its post-trial brief, Safe Haven included additional arguments describing its arguments as to why it believed that TDI's response to Interrogatory No. 16 was fraudulent. *See* ECF No. [43-5].

On December 30, 2014, the Arbitrator issued his six-page decision, which addressed Safe Haven's Motion to Dismiss and provided a detailed explanation for denying Safe Haven's motion. The Award, in relevant part, explained:

> Safe Haven Enterprises, LLC (hereinafter called "Safe Haven") has filed a Motion to Dismiss based upon an alleged false answer to an Interrogatory which was propounded by Safe Haven to Thermal Dynamics International, Inc. (hereinafter "Thermal") while the case was pending in the United States District Court. The interrogatory in question was:
>
>> "Identify all work performed by TDI for the Yemen Environmental Security Project and the Bahrain Environmental Security Project that was performed pursuant to any contract, dealing, working relationship, financial arrangement or otherwise of which Safe Haven was not a party to . . ."
>
> Thermal answered the interrogatory as follows:
>
>> "TDI states that it did not perform any work for the Yemen Environmental Security Project and Bahrain Environmental Security Project pursuant to any contract to which Safe Haven was not a party."
>
> Safe Haven contends that the answer set forth above was false and that, as a result, Thermal should be denied any relief in this matter.
>
> The evidence established that Thermal had entered into a contract relating to the supply of a chiller or chillers with regard to the Bahrain site and a separate contract with the US Department of State regarding the replacement of certain damaged filters at the Yemen site. However, neither of these contracts related to the scope of the contract between Safe Haven and Thermal. Thus, depending on the definition of "Yemen Environmental Security Project" and "Bahrain Environmental Security Project" the aforesaid answer could be considered correct or incorrect. If those "projects" related to the scope of the contract between the parties here, then the answer is correct; whereas, if the "projects" related to work related to any "environmental security project" the answer was incorrect.
>
> In my opinion, a reasonable interpretation of this Interrogatory would indicate that it related only to the "projects" referenced in the contract dated September 7, 2006 between and therefore, the answer to the Interrogatory was correct.
>
> Even assuming arguendo that I were to have concluded otherwise, the evidence in the case does not indicate that any sanction would be appropriate in any event. Prior to the hearing, documents were provided by Thermal to Safe Haven which

13

> evidenced the existence of other contracts that Thermal had entered into other than the one with Safe Haven. Thus, Safe Haven was prepared to and did assert its defenses and claims at the hearings and suffered no actual prejudice.

Arbitration Decision (Dec. 30, 2014), ECF No. [43-3], at 2-3.

Citing the Arbitrator's decision, TDI contends that the record "establishes, beyond dispute, that [Safe Haven] presented its discovery complaint to the Arbitrator and that the Arbitrator gave due consideration to [Safe Haven]'s discovery complaints and found them to be without merit." TDI's Reply Mem. in Support of TDI's Mot., ECF No. [54], at 7.

### C. <u>The Court shall confirm the Award. There is no basis to vacate the Award issued by the Arbitrator or to conclude that sanctions would be appropriate in this case.</u>

Upon review of the parties' submissions and the record as a whole, the Court finds that there is no basis to vacate the Award issued by the Arbitrator or to conclude that sanctions would be appropriate in this case. Accordingly, the Court shall confirm the Arbitration Award pursuant to Section 9 of the Federal Arbitration Act. *See* 9 U.S.C. § 9.

At the outset, the Court observes that Section 12 of the Federal Arbitration Act governs motions to vacate, modify, or correct arbitration awards. 9 U.S.C. § 12. In particular, Section 12 states, in pertinent part, that a "motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within *three months after the award is filed or delivered*." 9 U.S.C. § 12 (emphasis added). In this case, Safe Haven did not file a motion to vacate within three months of the Award. Instead, Safe Haven chose to wait 11 months after delivery of the Arbitration Award, and filed its motion to vacate only after TDI timely filed its motion to confirm the Award.

In its motion, Safe Haven asks that the Court to create an exception to the Federal Arbitration Act's three-month time limitation in the form of a sanction against TDI. However, it is well established that "there are neither common law nor statutory exceptions to the three

month deadline," and this Court has no authority to extend the statutory deadline for serving a motion to vacate an arbitration award. *Argentine Republic v. Nat'l Grid Plc*, 637 F.3d 365, 368 (D.C. Cir. 2011); *see also Dalal v. Goldman Sachs & Co.*, 541 F. Supp. 2d 72, 76 (D.D.C. 2008), *aff'd sub nom.* 575 F.3d 725 (D.C. Cir. 2009).

Furthermore, when a party opposing confirmation of an award fails to file a motion to vacate within the allowable three-month window, that party is barred from raising arguments to vacate the award in support of an opposition to confirm. *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (2d Cir. 1984) ("[A] party may not raise a motion to vacate, modify, or correct an arbitration award after the three month period has run, even when raised as a defense to a motion to confirm."); *accord Domino Grp., Inc. v. Charlie Parker Mem'l Found.*, 985 F.2d 417, 419-20 (8th Cir. 1993); *Cullen v. Paine, Webber, Jackson & Curtis, Inc.*, 863 F.2d 851, 854 (11th Cir. 1989); *Prof'l Adm'rs Ltd. v. Kopper–Glo Fuel, Inc.*, 819 F.2d 639, 642 (6th Cir. 1987); *Taylor v. Nelson*, 788 F.2d 220, 225 (4th Cir. 1986), *see also Chauffeurs, Teamsters, Warehousemen & Helpers, Local Union No. 135*, 628 F.2d 1023, 1026 (7th Cir. 1980).  The United States Circuit Court of Appeals for the District of Columbia ("the D.C. Circuit") has not squarely addressed this issue, but other courts in this district have recognized that "courts have uniformly held that a party who fails to make a timely motion to vacate an arbitration award is barred from raising affirmative defenses in a suit to enforce the award." *Sheet Metals Workers Nat'l Pension Fund v. Metals & Machining Fabricators, Inc.*, 622 F. Supp. 116, 118 (D.D.C. 1985); *see also Int'l Technologies Integration, Inc. v. Palestine Liberation Org.*, 66 F. Supp. 2d 3, 14 (D.D.C. 1999). "Any other result would do violence to the underlying purposes of arbitration in general and the FAA." *Palestine Liberation Org.*, 66 F. Supp. 2d at 14.

Even if Safe Haven had timely filed a motion to vacate, the Court finds Safe Haven's allegation that the Arbitration Award was procured through fraud to be baseless. Safe Haven raised these same allegations of fraud before the Arbitrator, and Safe Haven was provided multiple opportunities to fully brief and argue its position during the arbitration. The Arbitrator found Safe Haven's arguments to be without merit. *See* Arbitration Decision (Dec. 30, 2014), ECF No. [43-3], at 2-3. The Arbitrator held that, even if there had been wrongdoing on the part of TDI (the Arbitrator found none), Safe Haven had suffered no prejudice because it had the full opportunity to prepare and assert its defenses during the arbitration proceeding. *See id.* As such, there is no evidence in the record—much less "clear and convincing evidence," which is required to vacate an arbitration award under the Federal Arbitration Act—that TDI engaged in fraudulent conduct or used undue means such that Safe Haven was "effectively denied" a "fundamentally fair hearing." *ARMA, S.R.O. v. BAE Sys. Overseas, Inc.*, 961 F. Supp. 2d 245, 254 (D.D.C. 2013). Therefore, the Court finds that there is no basis to vacate the Award issued by the Arbitrator on December 30, 2014. *See* 9 U.S.C. §§ 10, 11.

For the reasons described above, the Court also finds that the sanctions sought by Defendants are not appropriate in this case. The D.C. Circuit has recognized that in rare occasions, a "district court may order sanctions, including a default judgment, for misconduct . . . pursuant to the court's inherent power to protect [its] integrity and prevent abuses of the judicial process." *Webb v. District of Columbia*, 146 F.3d 964, 971 (D.C. Cir. 1998) (citation omitted). Sanctions in the form of dismissal may be warranted if: (1) the moving party "has been so prejudiced by the misconduct that it would be unfair to require him to proceed further in the case"; (2) the misconduct put "an intolerable burden on a district court by requiring the court to modify its own docket and operations in order to accommodate the delay"; or (3) the Court needs

"to sanction conduct that is disrespectful to the court and to deter similar misconduct in the future." *Shea v. Donohoe Construction Co.*, 795 F.2d 1071, 1074–77 (D.C. Cir. 1986); *accord Webb*, 146 F.3d at 971. "A sanction imposed pursuant to any of these considerations must be based on findings supported by the record." *Webb*, 146 F.3d at 971.

As described above, there is no evidence in the record to support a conclusion that any of the sanctions sought by Safe Haven are warranted in this case. There is no evidence that Safe Haven "has been so prejudiced [by any alleged misconduct] that it would be unfair to require [it] to proceed further in the case," or that the alleged misconduct put "an intolerable burden" on this Court, or that the Court needs "to sanction conduct that is disrespectful to the court." *Shea*, 795 F.2d at 1074–77. The Arbitrator provided Safe Haven with a plethora of opportunities to raise its concerns about the discovery undertaken in this case. After several rounds of extensive briefing, the Arbitrator determined that TDI's arguments were without merit. This Court shall not circumvent the plain text of the Federal Arbitration Act and substitute its own factual and legal conclusions for the conclusions of the Arbitrator. *See, e.g.*, *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38, 108 (1987); *Teamsters Local Union No. 61 v. United Parcel Serv., Inc.*, 272 F.3d 600, 604 (D.C. Cir. 2001).

Accordingly, the Court shall deny Safe Haven's last-gasp motion for sanctions against TDI, and shall issue an Order confirming the Award. *See* 9 U.S.C. § 9 (requiring courts to issue an order confirming an arbitration award "unless the award is vacated, modified, or corrected as prescribed in [9 U.S.C. §§ 10–11].").

### D. Plaintiff's Remaining Claim against Defendants Alta Baker and John Baker.

Finally, the Court notes that Plaintiff still has a single unjust enrichment claim pending against Defendants Alta Baker and John Baker. *See* Mem. Op. and Order, ECF Nos. [20], [21].

It appears to the Court that the outcome of the arbitration proceeding may impact Plaintiff's decision as to whether to continue pursuing its unjust enrichment claim against Defendants Alta Baker and John Baker.[4]

In light of the foregoing, Plaintiff shall file, by no later than **June 10, 2016**, a Status Report indicating whether there are any remaining issues to be resolved as to Plaintiff's remaining claim against Defendants Alta Baker and John Baker.  If a Status Report is not filed with the Court by that date, then the Court shall dismiss without prejudice Plaintiff's remaining claim against Defendants Alta Baker and John Baker.

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's [43] Motion to Confirm Arbitration Award and DENIES Defendants' [47] Cross Motion to Dismiss.

An appropriate Order accompanies this Memorandum Opinion.

                                                                                                             /s/
                                                  COLLEEN KOLLAR-KOTELLY
                                                  United States District Judge

---

[4] Pursuant to the Court's Minute Order issued on May 7, 2014, Plaintiff's case against Defendants Alta Baker and John Baker was stayed, pending the resolution of the associated arbitration involving Plaintiff and Defendant Safe Haven.  In that Minute Order, the Court required the parties to file, within 10 business days of the resolution of the arbitration, a Joint Status Report, indicating whether there were any remaining issues to be resolved.  However, no such Joint Status Report was ever filed with the Court.